UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICKI M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security,[1] <br><br> Defendant. | CASE NO. C19-0310-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1967.[2] She completed high school and some college (AR 61, 289) and has no past relevant work (AR 74, 271).

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant.

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed an SSI application on September 25, 2014, alleging disability beginning April 6, 2010. (AR 262.)[3] The application was denied initially and on reconsideration.

On September 11, 2017, ALJ Ilene Sloan held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 55-81; *see also* AR 34-54 (earlier attempts at hearings postponed).) On November 28, 2017, the ALJ issued a decision finding plaintiff not disabled as of the September 2014 application date. (AR 15-26.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on December 27, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe: major depressive disorder; post-traumatic stress disorder (PTSD); dependent personality disorder; avoidant personality disorder; unspecified anxiety disorder; borderline personality disorder; history of histrionic personality disorder; and cannabis dependence disorder. He found other diagnoses/conditions non-severe, including amphetamine use disorder, seizure disorder, antiphospholipid antibody syndrome with resulting stroke, renal insufficiencies, asthma,

---

[3] Plaintiff did not appeal the denial of a prior, 2013 application. (*See* AR 59, 253; Dkt. 10 at 1.)

ORDER
PAGE - 2

somatization disorder, and rule-out malingering. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, but with the following non-exertional limitations: understand, remember, and carry out short and simple instructions; occasional and superficial contact with the general public, co-workers, and supervisors; and adapt to routine changes in the workplace setting. Plaintiff had no past relevant work to consider at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a cleaner, hospital housekeeper, and hand packager.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff asserts error in relation to the medical evidence, RFC, symptom testimony, and at step five. She requests remand for an award of benefits or, alternatively, further proceedings. The Commissioner argues the ALJ's decision should be affirmed.

<u>Symptom Testimony</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p. [4]

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. She provided a number of specific, clear, and convincing reasons in support of that conclusion (*see* AR 22-23), including evidence plaintiff's symptoms were largely situational,

---

[4] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

*Chesler v. Colvin*, No. 13-36098, 2016 U.S. App. LEXIS 8836 at *2 (9th Cir. May 13, 2016); inconsistent treatment and failures to engage in treatment, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); and 20 C.F.R. §416.929(c); inconsistent reporting and statements, *see id*; SSR 16-3p; and evidence suggestive of exaggerated symptoms and malingering or secondary gain, *see Burrell*, 775 F.3d at 1139-40; *Thomas*, 278 F.3d at 959; and *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Contrary to plaintiff's contention, the ALJ reasonably identified multiple documents in the record as suggestive of malingering or secondary gain. (AR 23.) In March 2013, a doctor refused to sign a form attesting to disability due to "'IBS' and antiphospholipid syndrom[e]" because they did "not qualify" as disabling conditions. (AR 384.) When the doctor suggested a psychiatric evaluation, plaintiff became "very upset stating 'if you don't [fill] this out I cannot get any money[.]'" (*Id.*) The doctor also noted plaintiff denied she had been referred anywhere, despite referrals to neurology, rheumatology, and behavioral health for counseling. (*Id.*) In October 2014, plaintiff's social worker documented an incident in which plaintiff initially appeared "baseline and in good spirits", changed her tone to "sad and depressed" in leaving a voicemail for a child protective services case worker, and "was happy again" after she hung up. (AR 747.) In March 2015, when plaintiff was discharged following a hospitalization for a superficial suicide attempt, she reported "feeling 'pretty good' particularly because her son had informed her that the stay . . . may have allowed her to have SSI go through with possible back pay." (AR 23, 1014, 1047.) In a May 2015 examination, Dr. Sylvia Thorpe observed plaintiff's "odd presentation, suggestive of malingering" and diagnosed a rule-out malingering disorder. (AR 875.) Plaintiff reported interests and activities of "[r]iding motorcycle" and gardening, stated the motorcycle had not been built yet, but she rode as a passenger, and, when asked how she could ride a motorcycle

with her physical problems, plaintiff responded: "I like it." (*Id.*) Plaintiff sat slumped over, with eyes averted, spoke fine, then suddenly said she could not put anything into words, while immediately thereafter had no trouble speaking and using medical terminology. (AR 875, 877.) She presented herself as incapable, but contradicted her own words by proving otherwise. She had a very dramatic presentation, was "a theatre person as well", presented herself as helpless, had irregularities in her report, and "says she can't do things and then she can." (AR 878.) Due to inconsistencies, the mental status examination (MSE) was "probably not valid" and there was "likely malingering", as well as drug and alcohol use. (*Id.*) Given these examples, the ALJ reasonably found "issues of inconsistency or secondary gain motivation" supporting the finding plaintiff's mental symptoms are not disabling. (AR 23.)

Nor did the ALJ err in relying on some evidence of inconsistency dated prior to the applicable time period. While plaintiff could only receive SSI as of her application date, *see* 20 C.F.R. § 416.335, the ALJ properly considered all evidence relevant to the disability determination, *see* § 416.912(b) (Commissioner develops complete medical history for at least the 12 months preceding filing of application); SSR 16-3p (ALJs "consider all of the evidence in an individual's record" in assessing symptom testimony). The ALJ's evaluation of plaintiff's subjective symptom testimony has the support of substantial evidence.

### Medical Evidence

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step two, a claimant must make a threshold showing her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ must consider the "combined effect" of an individual's impairments in considering severity. *Id.* A diagnosis alone does not establish a severe impairment. A claimant must show her medically determinable impairments are severe. 20 C.F.R. § 416.921. Also, to meet the definition of disability, a claimant must have a severe impairment preventing substantial gainful activity and which has lasted or can be expected to last at least twelve months. §§ 416.905, 416.909.

RFC is the most a claimant can do considering her limitations or restrictions. § 416.945(a)(1). The ALJ must consider the limiting effects of all impairments, including those that are not severe, in determining RFC. § 416.945(a)(2). An RFC must include all functional limitations supported by the record. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." §§ 416.927(d)(2), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r*, *SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).

Plaintiff contends the ALJ mischaracterized and misinterpreted medical evidence, improperly minimized various conditions, and inappropriately evaluated durational requirements. She states the record shows undisputed objective evidence she, in fact, suffers from

antipholipid syndrome, witnessed seizures for which she takes the medication Lamictal, and had a front parietal stroke, leaving left-side residual physical symptoms and mental impairments. She requires weekly monitoring of her daily anticoagulation therapy with Coumadin to prevent future strokes (*see* AR 358-815) and saw her primary care providers some twenty-one times between October 2014 and July 2015 (*see* AR 898). Plaintiff maintains error at steps two and three, and harm given the absence of associated limitations in the RFC.

The ALJ did not deny plaintiff had a number of conditions, including, *inter alia*, antipholipid syndrome, a seizure disorder, and residuals from a 2008 stroke. The ALJ noted "various medical diagnoses, mostly historical," and found them non-severe. (AR 18.) They were "largely either part of her medical history and not chronic conditions, or were sufficiently treated without complication." (*Id*.)

While plaintiff had a history of a seizure disorder and antipholipid antibody syndrome with resulting stroke many years before the application date, one provider noted "her anxiety interfered with her medical diagnoses." (AR 18, 358.) There was evidence of a front parietal stroke, but it was very remote and possibly related to prior drug use. (AR 18, 370.) Other providers attributed the strokes to antipholipid syndrome (AR 1031), which had been treated with Coumadin since 2005 (AR 358, 391). While plaintiff was non-compliant with anticoagulation medications in the years leading up to her application, there were no recent complications from the noncompliance (AR 383-86) and, as of 2014, she was doing well with the condition (AR 645).

The ALJ found the alleged residuals from plaintiff's prior stroke "somewhat unclear." (AR 18.) Plaintiff mentioned a hand tremor or inability to steady her left hand at hearing, but medical records were very unclear about the diagnosis of a residual tremor. A tremor was not consistently observed and, at other times, plaintiff reported work on her self-reported "deficits" from her old

stroke. (*Id.*) She was diagnosed with mild left-sided paresis at one appointment. (AR 1111.) Another evaluation described her as unaware of her visual spatial impairments. (AR 1171.) In September 2016, a doctoral candidate diagnosed a mild neurocognitive impairment, noted left-sided impairments consistent with her right hemisphere stroke but "difficult[] to see", and a "subtle form of left neglect, which further complicates the diagnosis[.]" (AR 18, 1028-43.)

The ALJ noted a medical provider's opinion plaintiff's seizures were related to her extensive drug use and testing "somewhat uncertain" as to their character. (AR 18, 361.) "For example, a four-day EEG video monitoring test revealed 12 subjective episodes, but none appeared to be epileptic seizures." (AR 18, 371-72.) Plaintiff had witnessed seizures in September 2013, when taken to the hospital for an altered mental status, ultimately determined to be postictal and non-convulsive. (AR 661-62.) A July 2014 brain CT revealed no acute intracranial abnormalities and an old infarct and mild cerebral volume loss. (AR 716-17.) In April 2015, plaintiff experienced psychogenic seizures due to stressors and poor coping skills, but no one witnessed the events and she had been out of seizure medications at the time. (AR 934, 1002.)

Plaintiff fails to identify error in the ALJ's consideration of her impairments, either at steps two or three or as considered in relation to the RFC. She points specifically to the September 2016 neuropsychological report (AR 1028-43) as reflecting the evaluators supported her efforts to work with the Division of Vocational Rehabilitation (DVR) towards part-time employment, that her "visual spatial impairments, of which she seems unaware, suggest that work in radiology would be very difficult for her[,]" and that she "has strong verbal skills, works well independently, and has some experience with voice recognition software, which helps compensate for her extremely slow typing." (AR 1042, 1171; *see also* AR 1034 (plaintiff expressed interest in continuing her studies and earning a radiology certification).) However, as the Commissioner observes, this

ORDER
PAGE - 9

document merely reflects the evaluators supported plaintiff's efforts in working with DVR in the pursuit of part-time employment; it did not include a limitation to part-time work or an opinion plaintiff could not work full-time. Plaintiff also takes issue with the ALJ's failure to include limitations associated with her left hand in the RFC, but fails to identify a medical opinion supporting any such limitations.

Plaintiff otherwise and in large part merely suggests a different interpretation of the evidence. However, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ here rationally interpreted the evidence associated with plaintiff's various conditions. *See, e.g.*, *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") The ALJ also continued the inquiry beyond step two, finding a number of conditions severe and adopting limitations in functioning. To the extent plaintiff avers other limitations should have been adopted, she fails to identify substantial evidence support for that contention. The ALJ's conclusions have the support of substantial evidence and will not be disturbed.

### Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830. Where doctors' opinions are contradicted, as in this case, they may only be rejected with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoted source omitted). Opinions offered by "other sources,"

ORDER
PAGE - 10

may be assigned less weight, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discounted with reasons germane to the witness, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff describes different reports from medical providers in the record, but her assignments of error are either unclear or lack merit. She notes consultative psychological examiner Dr. Carl Epp found impaired concentration following errors in performing "serial 7 subtractions," with "virtually no recognition" of the errors, and found concentration "probably the greatest weakness" on MSE, "along with her emotional self description[.]" (AR 865-66.) Plaintiff does not, however, address the ALJ's reasons for assigning little weight to Dr. Epp's assessment, including the "very normal and some high normal scores on memory testing", the limited value of a Global Assessment of Functioning (GAF) score, and the fact "he did not render an opinion on disability" and, rather, "only summarized that the claimant's thought processes were not clear and cogent." (AR 24, 865-69.) The ALJ's reasoning withstands scrutiny. *See Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."); Administrative Message 13066 (a GAF score cannot alone be used to "raise" or "lower" someone's level of function and, unless the reasons behind the rating are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis); *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign specific limitations or opinions in relation to an ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."); and *Morgan*, 169 F.3d at 601 (physician's reports did not show how a claimant's "symptoms translate into specific functional deficits which preclude work activity."; while physician "identified characteristics" that might at

times limit the ability to work on a sustained basis he "did not explain how these characteristics precluded work activity").

Plaintiff takes issue with the ALJ's acceptance of Dr. Thorpe's observations and findings regarding likely malingering, while rejecting her assessment of marked limitations in relation to work safety, communicating/performing and appropriate behavior in a work setting, and in working a normal workweek without interruption from symptoms (AR 876). Yet, plaintiff fails to counter the specific and legitimate reasons for assigning little weight to this opinion evidence, including the observation most of Dr. Thorpe's ratings were moderate and the conclusion the marked ratings were not well-supported, lacked an explanation or narrative functional assessment, and were inconsistent with plaintiff's ability to care for multiple dogs, her grandchild, and her son. (AR 24-25, 870-78.) *See Molina*, 674 F.3d at 1111 (ALJ may reject opinion lacking explanation for conclusions); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject opinion due to discrepancy or contradiction with doctor's own notes or observations); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); and *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may reject opinion inconsistent with activity).

Plaintiff points to a June 2017 psychological evaluation by Dr. Ellen Walker as describing her as cooperative, but clearly anxious and with a depressed mood, and assessing a marked limitation in the ability to understand, remember, and persist in tasks following detailed instructions. (AR 1189.) Again, however, plaintiff does not directly challenge the reasons offered by the ALJ for assigning little weight to this and the other marked limitations assessed by Dr. Walker. The ALJ noted Dr. Walker rated plaintiff with none to mild impairment in dealing with short and simple instructions, maintaining attendance and appropriate behavior, and performing

routine tasks. (AR 24.) She stated the marked limitations appeared to be largely based on plaintiff's self-reported symptoms, noting the very brief MSE and the observation of memory not within normal limits, but the absence of any indication or description of objective or clinical testing. The ALJ reasonably concluded that, due to the lack of objective findings, Dr. Walker appeared to rely heavily on plaintiff's subjective complaints and reported history. (*See* AR 1187-91); *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan*, 169 F.3d at 602).

Plaintiff also describes a variety of findings from the September 2016 neuropsychological report (AR 1028-43) and contends the ALJ erred in assigning great weight to the opinions of State agency medical consultants who reviewed only some records and never conducted examinations. Plaintiff does not, however, demonstrate any error in the consideration of the neuropsychological report, including, but not limited to, its support for plaintiff's efforts to work with DVR. Nor does plaintiff's conclusory assignment of error in relation to the non-examining doctors demonstrate error. (*See* AR 23-24 (giving significant weight to consultants' opinions that plaintiff's physical conditions caused no more than minimal severity and pointing to earlier discussion that the conditions were largely historical and did not create chronic symptoms after the application date; giving great weight to psychological consultants' opinions, agreeing with their finding of moderate ratings in the social domain and in concentration, persistence, or pace, and finding them consistent with plaintiff's subjective reports of social anxiety and difficulty with memory, but not overly restrictive given plaintiff's ability to re-establish relationships with her sons and her ability to care for pets and her grandchildren)); *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with

independent clinical findings or other evidence in the record."). Plaintiff, in sum, does not demonstrate error in the ALJ's consideration of the medical opinion evidence.

### Step Five

Plaintiff also avers error at step five. She asserts the erroneous RFC implicated the step five conclusion. Because the Court finds no error in the assessment of the medical evidence, RFC, or corresponding hypothetical to the VE, this mere restating of plaintiff's argument does not establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Plaintiff contrasts the need to understand detailed instructions in each of the step five jobs, with the short, simple instructions in the RFC and VE hypothetical. However, there is no conflict between the RFC limitation to short and simple instructions and the ability to carry out "'detailed *but uninvolved* . . . instructions" in all three of the jobs identified at step five.[5] *Ranstrom v. Colvin*, No. 13-35943, 2015 U.S. App. LEXIS 19869 *4-5 (9th Cir. Nov. 16, 2015) ("There is no appreciable difference between the ability to make simple decisions based on 'short, simple instructions' and the ability to use commonsense understanding to carry out 'detailed *but uninvolved* . . . instructions,' which is what Reasoning Level 2 requires.") (quoting *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)). Plaintiff, finally, states with no further discussion that the ALJ identified erroneous and not significant numbers of jobs, while the ALJ properly relied on the VE's testimony of a significant number of jobs nationally, including 270,000 cleaner jobs, 150,000 hospital housekeeper jobs, and 28,000 hand packager jobs. (AR 25-26, 75.) *See*, *e.g.*, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (2,500 jobs in California and 25,000 jobs in several regions of the country constituted significant numbers of jobs);

---

[5] *See* Dictionary of Occupational Title (DOT) 381.687-018 (cleaner, industrial); DOT 323.687-010 (cleaner, hospital); and DOT 920.587-018 (hand packager).

ORDER
PAGE - 14

*Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (over 2,300 jobs in the San Diego County area and 64,000 nationwide constituted a significant number). *See also Beltran v. Astrue*, 676 F.3d 1203, 1206-07 (9th Cir. 2012) (a "'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)."; upon finding "*either* of the two numbers 'significant,'" the Court "must uphold the ALJ's decision.") (emphasis in original) (citing 42 U.S.C. § 423(d)(2)(A)).

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 6th day of November, 2019.

Mary Alice Theiler
United States Magistrate Judge